Filed 1/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B302815 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A710815) |
| v. | |
| ALBERTO BETO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge. Affirmed.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Idan Ivri and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Effective January 1, 2019 the Legislature changed the law governing whether a defendant can be convicted of murder under a felony murder or natural and probable consequences theory. To limit the scope of the first doctrine and eliminate entirely the second, the Legislature enacted Penal Code section 188, subdivision (a)(3),[1] which provides that, except as stated in section 189, subdivision (e), to be convicted of murder a principal in a crime must act with malice and that malice may not be imputed based solely on participation in a crime. Section 189, subdivision (e), also effective January 1, 2019, in turn provides an exception to the malice requirement for murder by stating that an individual can be liable for first degree felony murder if the person (1) was the actual killer, (2) acted with the intent to kill in aiding and abetting the actual killer, or (3) was a major participant in the underlying felony and acted with reckless indifference to human life.

But the Legislature also enacted an exception to the exception in section 189, subdivision (e): section 189, subdivision (f). The latter provision allows (or at least was intended to allow) individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or reasonably should know) these facts. Which makes sense: The Legislature has recognized peace officers face unique dangers when performing their official duties.

---

[1] Statutory references are to the Penal Code.

Section 189, subdivision (f), however, does not quite say what the Legislature meant it to say. It states: "Subdivision (e) does not apply to a defendant when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." The problem is that, if section 189, subdivision (e), "does not apply," then arguably section 188, subdivision (a)(3), does apply, which would mean the prosecution must prove malice when the victim of a felony murder is a peace officer, but not when the victim is someone other than a peace officer. Which does not make sense.

Alberto Hernandez relies on this apparent legislative misstep in his appeal from the superior court's order denying his petition under section 1170.95, which allows certain defendants convicted of murder under a felony murder or natural and probable consequences theory to petition the court to vacate their convictions and for resentencing. Hernandez contends the superior court erred in ruling that section 189, subdivision (f), like the three circumstances in section 189, subdivision (e), is an exception to section 188, subdivision (a)(3), and that the prosecution does not need to prove the defendant acted with malice to convict the defendant of the murder of a peace officer under the felony murder doctrine.

We conclude the superior court correctly ruled section 189, subdivision (f), does not require the prosecution to prove the defendant acted with malice. We also conclude, contrary to Hernandez's contentions, that the law of the case doctrine did not preclude the superior court from finding he could be convicted of first degree felony murder under current law and that the

3

superior court did not apply the wrong legal standard in determining whether he had the requisite knowledge under section 189, subdivision (f). Therefore, we affirm the order denying Hernandez's petition under section 1170.95.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *A Jury Convicts Hernandez of Felony Murder and Burglary*

1.   *Hernandez Burglarizes an Electronics Store with a Friend, Who Shoots a Police Officer*

On June 7, 1988, shortly after midnight, Hernandez and his friend Bobby Steele broke into an electronics store and activated a burglar alarm. Four officers of the Los Angeles Police Department, including Officer James C. Beyea and his partner Officer Ignacio Gonzalez, responded to the alarm. After finding no one in the store, Officer Beyea and Officer Gonzalez drove to a police telephone about 100 yards from the store to call the store's owner. The store's alarm, however, sounded again. Believing the suspects may have returned to the store, Officer Beyea and Officer Gonzalez went back to the store without turning on the lights on their patrol car so they could "sneak up on the suspects."

As they approached the store, Officer Gonzalez saw a suspect in a white jacket leaving through a sliding door. The suspect ran down a driveway to the back of the store, and Officer Gonzalez pursued him in the patrol car. When Officer Gonzalez and Officer Beyea arrived at the back of the store, Officer Gonzalez saw another suspect, wearing dark clothing, running through a shipping yard on the other side of a fence from the

4

electronics store.  Officer Beyea called for backup, while Officer Gonzalez backed the patrol car out of the driveway and drove around the block to corner the suspects.  When no one appeared, Officer Gonzalez suggested that Officer Beyea continue on foot, while he drove around the block.  As Officer Gonzalez returned to the place where he left Officer Beyea, he saw the suspect who was wearing the white jacket struggling with Officer Beyea.  Officer Gonzalez then saw the suspect, who was later determined to be Steele, raise his arm and point it at Officer Beyea.  Officer Gonzalez heard two gunshots, which killed Officer Beyea.

Meanwhile, at 1:00 a.m. a woman living in an apartment complex near the electronics store heard "hysterical crying or laughing" outside her window.  After hearing something "clanking" on a chain-link fence behind her building, she looked outside and saw two men, one wearing dark clothing and the other wearing a white jacket, crouched and talking in low voices.  The men got up and ran in the same direction.  Less than a minute later, the woman heard two gunshots.  She saw police lights in the area and a police helicopter, but called the police anyway.

### 2.    *The Police Find Hernandez and Steele*

At 1:30 a.m. police officers found Hernandez, alone and unarmed, hiding in bushes half a block from the electronics store.  Officers also discovered stereo equipment in nearby bushes.  Officers eventually found Steele hiding in the attic of an abandoned house, where officers killed him during a confrontation.  The officers found Officer Beyea's gun next to Steele's body.

### 3.    *The Police Interview Hernandez*

Police detectives interviewed Hernandez, who admitted he was involved in the burglary.  Hernandez said he and Steele fled the electronics store when they heard helicopters.  Hernandez stated that he followed Steele as Steele climbed over a wall, but that when he saw a police officer chase Steele on the other side, Hernandez ran in a different direction and hid in the bushes.  Hernandez said that he did not see the officer confront Steele, but that, after he heard gunshots, he saw Steele run past him.  Hernandez remained hidden in the bushes until police found him.  Hernandez told police Steele did not have a gun.

### 4.    *A Jury Convicts Hernandez of Felony Murder, and This Court Affirms but Modifies the Judgment*

The People charged Hernandez with first degree murder and commercial burglary and alleged a principal was armed with a firearm, within the meaning of section 12022, subdivision (a).  At trial, the prosecution proceeded only on a theory of first degree felony murder, and the trial court instructed only on that theory.  The trial court, however, did not tell the jury to make a finding on the degree of felony murder, and the verdict form did not ask the jury to specify the degree.  The jury found Hernandez guilty of murder and commercial burglary "as charged" and found true the firearm allegation.  The trial court sentenced Hernandez to 25 years to life on the first degree murder conviction, sentenced him to a consecutive term of two years for the burglary conviction, and imposed and stayed execution of the one-year firearm enhancement.

In 1990 this court affirmed Hernandez's conviction but modified the judgment. (*People v. Hernandez* (Oct. 15, 1990, B041270) [nonpub. opn.] (*Hernandez I*).) Citing *People v. McDonald* (1984) 37 Cal.3d 351 (*McDonald*), this court held section 1157 required the court to correct the judgment to show Hernandez was convicted of second degree murder.[2] (See *Hernandez I, supra*, B041270.) On remand the trial court resentenced Hernandez to 15 years to life on the conviction for second degree murder.

B. *The Legislature Enacts Senate Bill No. 1437 and Establishes the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder by amending sections 188 and 189. As discussed, new section 188, subdivision (a)(3), provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." New section 189, subdivision (e), provides that, with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs (that is, those crimes that

---

[2] Section 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

7

provide the basis for first degree felony murder), an individual is liable for murder "only if one of the following is proven:  [¶] (1)  The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  New section 189, subdivision (f), provides that section 189, subdivision (e), "does not apply to a defendant when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties."

Senate Bill No. 1437, through new section 1170.95, also authorized an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if the individual could not have been convicted of murder under changes Senate Bill No. 1437 made to the definition of murder.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236-237 (*Rodriguez*).)  If the petition contains all required information, and the court determines the petition is facially sufficient, section 1170.95, subdivision (c), prescribes a two-step procedure for determining whether to issue an order to show cause:  "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel,

8

the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

If the court issues an order to show cause, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Rodriguez*, *supra*, 58 Cal.App.5th at p. 237; *Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (*Rodriguez*, at p. 237; see § 1170.95, subd. (d)(3).) The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (*Rodriguez*, at p. 237; see *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.)

C.      *Hernandez Files a Petition Under Section 1170.95*

On January 4, 2019 Hernandez filed a petition under section 1170.95. He alleged, among other things, that he was convicted of felony murder on a theory on which he could not be convicted after the amendments to sections 188 and 189 and that he was not the actual killer, was not a major participant in the felony, and did not act with reckless indifference to human life. He also alleged: "The victim of the murder was not a peace

9

officer in the performance of his or her duties, or I was not aware that the victim was a peace officer in the performance of his or her duties and the circumstances were such that I should not reasonably have been aware that the victim was a peace officer in the performance of his or her duties."

The superior court appointed counsel for Hernandez, and the prosecutor filed a response to Hernandez's petition. The prosecutor argued Hernandez was ineligible for relief under section 1170.95 because "the victim was a peace officer who was killed while in the course of his duties, and [Hernandez] knew that the victim was a peace officer engaged in the performance of his duties as defined in Penal Code section 189(f)."[3] Hernandez filed a reply asserting that section 189, subdivision (f), did not apply to his conviction for second degree murder because second degree felony murder "no longer exists in California" and that, even if it did, Hernandez did not "endanger" Officer Beyea.

The superior court found Hernandez made a prima facie showing he fell within the provisions of section 1170.95, and although the court did not issue an order to show cause, the court set the matter for an evidentiary hearing. The prosecutor filed a supplemental response arguing, among other things, section 1157 no longer required the court to reduce a conviction for first degree murder to second degree murder where the trial court did not instruct the jury to determine the degree of the murder or give

[3] The prosecutor also argued that Senate Bill No. 1437 was unconstitutional and that Hernandez was not eligible for resentencing under section 1170.95 because he was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." The People do not make either of these arguments on appeal.

10

the jury a verdict form asking the jurors to specify the degree, so long as the court correctly instructed the jury only on first degree felony murder. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 908-909 (*Mendoza*).) Thus, the prosecutor argued, Hernandez was ineligible for resentencing under section 1170.95 because he could still be convicted of first degree murder.

The court held an evidentiary hearing and denied the petition. The court ruled Hernandez was not entitled to relief under section 1170.95 because he could still be convicted of first degree murder under section 189, subdivision (f). The superior court also agreed with the prosecutor's argument that section 1157 would no longer require a court to reduce Hernandez's original conviction for first degree murder to second degree murder. Hernandez timely appealed.

## DISCUSSION

A. *The Prosecution Does Not Have To Prove Malice To Convict a Defendant of Felony Murder Under Section 189, Subdivision (f)*

1. *Applicable Law*

"The construction and interpretation of section 1170.95 is a question of law we consider de novo." (*People v. Howard* (2020) 50 Cal.App.5th 727, 737.) Our task "is to ascertain the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] In doing so, however, we do not consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and

11

purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" (*Mendoza*, *supra*, 23 Cal.4th at pp. 907-908; see *Howard*, at p. 737.)

### 2. *Section 189, Subdivision (f), Is an Exception to the Malice Requirement of Section 188, Subdivision (a)(3)*

As discussed, Hernandez's primary argument is essentially based on a drafting oversight: Section 188, subdivision (a)(3), says that, except as set forth in section 189, subdivision (e), all murder requires malice aforethought, and malice cannot be imputed based solely on a person's participation in a crime.[4] Under section 189, subdivision (e), the prosecutor must show the defendant was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. If the circumstances described in section 189, subdivision (f), exist, however, section 189, subdivision (e), "does not apply." Hernandez asserts that, where section 189, subdivision (f), applies (and subdivision (e) "does not"), the prosecutor still must show the defendant acted with malice under section 188, subdivision (a)(1) or (a)(2), because the Legislature could have

---

[4] Section 188, subdivision (a)(1), defines express malice, and section 188, subdivision (a)(2), provides for malice "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

identified, but did not identify, section 189, subdivision (f), as an exception to section 188, subdivision (a)(3).

Hernandez's proposed interpretation, however, would lead to an absurd result: It would make it no easier for prosecutors to convict defendants of murder where the victim is a peace officer than it would be where the victim is not a peace officer. We cannot adopt such an interpretation. To the contrary, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246; see *People v. Bullard* (2020) 9 Cal.5th 94, 107 [courts must interpret statutes to avoid absurd results]; *People v. Cook* (2015) 60 Cal.4th 922, 938, fn. 2 [courts interpret statutes to "avoid an absurd result the Legislature could not have intended"]; *In re Greg F.* (2012) 55 Cal.4th 393, 410 ["courts are obligated to 'adopt a common sense construction over one leading to mischief or absurdity'"]; *People v. Elliot* (2005) 37 Cal.4th 453, 478 [""We will avoid any interpretation that would lead to absurd consequences.""].) Even where the language appears clear, "it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment." (*In re Michele D.* (2002) 29 Cal.4th 600, 606; see *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616 [courts must generally follow the plain meaning of statutory language, "unless a literal interpretation would result in absurd consequences the Legislature did not intend"]; *People v. Ledesma* (1997) 16 Cal.4th 90, 95 [""[i]t is a settled principle of statutory interpretation that language of a statute should not be given a

literal meaning if doing so would result in absurd consequences which the Legislature did not intend"'"].) Section 189, subdivision (f), must at least make it easier to convict a defendant of felony murder when the victim is a peace officer. Interpreting section 189, subdivisions (e) and (f), as Hernandez proposes would violate one of the basic canons of statutory interpretation. (See *National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 433 ["the absurdity canon . . . counsels courts to 'avoid any [statutory] construction that would produce absurd consequences'"].)[5]

Hernandez's interpretation is also contrary to the policy of supporting and protecting peace officers engaged in the performance of their duties. For example, in its uncodified findings and declarations for section 189.1, a statute enacted in 2017 in response to an increase in the number of killings of police officers, the Legislature declared that it "recognizes the dangers faced by the men and women who serve as peace officers in the

---

[5] At oral argument, counsel for Hernandez argued his proposed interpretation does not lead to absurd consequences because, although it does not relieve the prosecution of having to prove malice, it does provide the prosecution with a benefit: If the prosecution proves the defendant acted with malice, then under section 189, subdivision (f), the defendant is "automatically" guilty of first degree murder. Under this proposed interpretation, although section 189, subdivision (f), does not make it easier to convict a defendant of murder when the victim is a peace officer, it does make it easier to convict a defendant of first degree malice murder by, in counsel for Hernandez's words, "elevating what otherwise would have been a second degree murder" to first degree murder. The problem with this interpretation is that, despite its ingenuity, there is no support for it in the statute's language or legislative history.

14

state" and that "it is the intent of the Legislature to reiterate that California law protects all victims of violent crime, including when the victim is a peace officer."  (Stats. 2017, ch. 214, § 1; see *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1563, fn. 7 ["an uncodified section of the enacted legislation . . . has the same force and effect as its codified sections"]; *Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 86 [an uncodified section of an act "is fully part of the law" and "must be read together with provisions of codes"].)  As the Supreme Court explained in *People v. Rodriguez* (1986) 42 Cal.3d 730 in upholding the constitutionality of section 190.2, subdivision (a)(7), which the voters approved to make defendants who intentionally and knowingly kill a peace officer engaged in the course of the performance of the officer's duties eligible for the death penalty (*People v. Rodriguez*, at pp. 780-781), there is a "special outrage that characteristically arises from the intentional murder of persons acting in certain official public safety capacities.  Society considers such killings especially serious for several reasons.  The community abhors the human cost to these especially endangered officers and their families, 'who regularly must risk their lives in order to guard the safety of other persons and property.'  [Citation.]  Murders of this kind threaten the community at large by hindering the completion of vital public safety tasks; they evince a particular contempt for law and government, and they strike at the heart of a system of ordered liberty.  Applying longstanding values, the electorate may reasonably conclude that an intentional murderer increases his culpability, already great, when he kills one whom he knew or should have known was a police officer performing his duties."

15

(*Id.* at p. 781;[6] see *People v. Sandoval* (2015) 62 Cal.4th 394, 423 ["murder of a peace officer engaged in the lawful performance of his duties" is "particularly heinous"]; *People v. Brady* (2010) 50 Cal.4th 547, 584 ["the murder of a peace officer engaged in performing official duties is a particularly aggravated form of murder"].)

Consistent with this policy and the applicable principles of statutory interpretation, section 189, subdivision (f), excuses the prosecution from proving, rather than requiring the prosecution to prove, the defendant acted with malice when the victim of a murder committed in the course of a felony listed in section 189, subdivision (a), is a peace officer engaged in the performance of the officer's duties and the defendant has the requisite knowledge. Properly understood, section 189, subdivision (f), provides that, when the victim is a peace officer under the conditions specified in that subdivision, the three circumstances in section 189, subdivision (e)—namely, the defendant was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life—"do not apply," and that under the first clause of section 189, subdivision (e), a defendant who participates "in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder." (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 326, fn. 6 ["The conditions for imposing liability for first

_____

[6]     Although section 189, subdivision (f), applies to both intentional and unintentional killings, the policies underlying section 190.2, subdivision (a)(7), apply equally to the Legislature's intent in imposing liability on accomplices under the felony murder doctrine where the victim is a peace officer in the circumstances identified in section 189, subdivision (f).

16

degree felony murder specified in section 189, subdivision (e), do not apply to a participant in one of the enumerated felonies when the victim is a peace officer who was killed while in the course of his or her duties when the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties."]; see also *People v. Gentile*, *supra*, 10 Cal.5th at p. 847 ["the Legislature said that with the exception of the felony murder rule, '[a] person's culpability for murder must be premised upon that person's *own actions and subjective mens rea*'"].)

The legislative history of Senate Bill No. 1437 eliminates any doubt this is the proper interpretation of section 189, subdivision (f). The Legislative Counsel's Digest states: "This bill would prohibit a participant in the perpetration or attempted perpetration of one of the specified first degree murder felonies in which a death occurs from being liable for murder, unless the person was the actual killer or the person was not the actual killer but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer, or the person was a major participant in the underlying felony and acted with reckless indifference to human life, *unless the victim was a peace officer who was killed in the course of performing his or her duties where the defendant knew or should reasonably have known the victim was a peace officer engaged in the performance of his or her duties*." (Legis. Counsel's Dig., Sen. Bill No. 1437 (2017-2018 Reg. Sess.), italics added; see *People v. Solis* (2020) 46 Cal.App.5th 762, 783 ["'The Legislative Counsel's Digest is the official summary of the legal effect of a bill and is relied upon by the Legislature throughout the legislative process.'"]; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980, fn. 3 ["The Legislative Counsel's summaries, which "'are prepared to

17

assist the Legislature in its consideration of pending legislation,'" while 'not binding,' are nevertheless 'entitled to great weight . . . .'"].)  The report of the Senate Rules Committee similarly explained that the Assembly amendments to Senate Bill No. 1437 provided "that the provisions of the bill do not apply when the decedent is a peace officer, as specified."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, p. 1.)  The report also stated the bill "[a]llows a defendant to be convicted of first degree murder if the victim is a peace officer who was killed in the course of duty, where the defendant was a participant in certain specified felonies and the defendant knew, or reasonably should have known, that the victim was a peace officer engaged in the performance of duty, *regardless of the defendant's state of mind*."  (*Id.* at p. 3, italics added; see *People v. Cruz* (1996) 13 Cal.4th 764, 773, fn. 5 ["'it is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain'"]; *People v. Turner* (2020) 45 Cal.App.5th 428, 437, fn. 7 ["Committee reports and bill analyses may be considered as appropriate legislative history because they 'shed light on the collegial view of the Legislature *as a whole*.'"].)

Finally, our interpretation of the statute is consistent with a leading treatise on California sentencing law, which explains section 189, subdivision (f), as follows:  "The only exception to the new felony-murder rule is when the victim of the homicide is a peace officer . . . .  If the defendant is a participant in one of the designated crimes and in the course of committing the felony a peace officer is killed, the defendant may be convicted of first degree felony murder *without any additional showing of malice or premeditation*.  [Citation.]  The defendant may be convicted of

18

felony murder without proof the defendant was the actual killer, that the defendant, with the intent to kill, assisted in the commission of the killing, or that the defendant was a major participant in the underlying felony and acted with reckless indifference to human life."  (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2020 supp.) § 23:48, italics added; see *People v. Lopez* (2020) 56 Cal.App.5th 936, 949-950 [citing this treatise in interpreting section 1170.95].)

> B.   *Hernandez Is Not Entitled to Relief Under Section 1170.95 Because He Could Be Convicted of Murder Under Current Law*

Hernandez argues that, because "this court determined 30 years ago that [he] was convicted of second degree murder, he cannot now be tried for, and thus could not be convicted of, first degree murder."  Hernandez asserts he is entitled to relief under section 1170.95 because "second degree felony murder has been abrogated completely" and section 189, subdivisions (e) and (f), "which only relate to first degree felony murder, don't apply."  He argues the law of the case doctrine precludes him from being convicted today of first degree felony murder.

While Hernandez may be right about second degree felony murder (see *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2 [under Senate Bill No. 1437 "the second degree felony-murder rule in California is eliminated"]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1142, fn. 3 [Senate Bill No. 1437 "brings into question the ongoing viability of second degree felony murder in California"]), he is wrong about section 1170.95 and the law of the case doctrine.[7]  As this court explained in *Rodriguez*, an

---

[7]     "'The law of the case doctrine states that when, in deciding an appeal, an appellate court "states in its opinion a principle or

19

inmate's petition under section 1170.95 "express[es] the hypothetical situation" of "what would happen today if he or she were tried under the new provisions of the Penal Code?" (*Rodriguez, supra,* 58 Cal.App.5th at p. 241.)  Once a petitioner establishes a prima facie case of eligibility, the prosecutor must prove under amended sections 188 and 189 the petitioner is ineligible for resentencing "under current law."  (*People v. Lopez, supra,* 56 Cal.App.5th at pp. 948-949; see § 1170.95, subd. (a)(3); *Rodriguez,* at p. 243.)  And if prosecuted today, under current law, Hernandez could be convicted of first degree murder under section 189, subdivision (f).  (See *Lopez,* at pp. 948-949 ["the prosecutor's burden is to prove that the state *would* be able to prove the petitioner's guilt of first or second degree murder under current law"].)  What this court decided in 1990, and whether that decision is law of the case, is not relevant to the analysis.

And even if it were, the exception to the law of the case doctrine for intervening changes in the law would apply.  (See *People v. Jurado* (2006) 38 Cal.4th 72, 94; *People v. Whitt* (1990) 51 Cal.3d 620, 638-639.)  As discussed, in *McDonald, supra,* 37 Cal.3d 351 the Supreme Court held section 1157 applied where, as occurred in Hernandez's trial, the trial court instructs the jury on first degree murder only and directs the jury to find the defendant guilty or not guilty of first degree murder. (*McDonald,* at p. 382.)  Citing *McDonald,* this court held in *Hernandez I* that the verdict in Hernandez's trial was

rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.'"'  (*People v. Alexander* (2010) 49 Cal.4th 846, 870.)

20

"undifferentiated as to degree" and that section 1157 required a reduction of Hernandez's conviction to second degree murder. (*Hernandez I*, *supra*, B041270.) In 2000, however, the Supreme Court in *Mendoza*, *supra*, 23 Cal.4th 896 overruled *McDonald* in cases where, as here, the trial court instructed the jury only on first degree felony murder. (*Mendoza*, at p. 908; see *People v. Gray* (2005) 37 Cal.4th 168, 200 [courts need not reduce the degree of the crime to a lesser degree under section 1157 "where the prosecution's sole theory in a murder case is felony murder"].) *Mendoza* was an intervening change in the controlling law after *Hernandez I*. (See *Whitt*, at pp. 636-639 [holding that *People v. Anderson* (1987) 43 Cal.3d 1104, which overruled *Carlos v. Superior Court* (1983) 35 Cal.3d 131, was "an intervening, controlling change in the law" and that the defendant could not rely on the overruled *Carlos* rule in his retrial].) Thus, even if the law of the case doctrine applied, so would the exception for an intervening, controlling change in the law. (See *Whitt*, at p. 639 ["Just as the law-of-the-case rule applies equally to both sides in a criminal case, so do its exceptions."].)

Finally, Hernandez contends "trying him for first degree murder would violate the Double Jeopardy Clause." An evidentiary hearing under section 1170.95, however, does not implicate double jeopardy because section 1170.95 "involves a resentencing procedure, not a new prosecution." (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1116, review granted Nov. 13, 2019, S258175.) The retroactive relief provided by section 1170.95 is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment that could implicate the Double Jeopardy Clause. (*Lopez*, at pp. 1115-1116; cf. *People v. Hanson* (2000) 23 Cal.4th 355, 357 ["When a defendant successfully appeals a

criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing."]; *People v. Davis* (1995) 10 Cal.4th 463, 514, fn. 10 ["Double jeopardy precludes reprosecution for an offense of which a defendant has been acquitted or to which jeopardy has otherwise attached."].) And even if a section 1170.95 evidentiary hearing were akin to a "reprosecution" (*Davis*, at p. 514, fn. 10) for purposes of the Double Jeopardy Clause, prohibitions against double jeopardy do not prevent a retrial where "a conviction is not reversed on appeal for insufficient evidence but because of a retroactive change in the law [such as section 1170.95]." (*Lopez*, at pp. 1115-1116.)

      C.    *Hernandez Knew or Should Have Known the Victim Was a Police Officer Engaged in the Performance of His or Her Duties Before Hernandez Reached a Place of Temporary Safety*

The superior court found Hernandez "knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties" under section 189, subdivision (f), because Hernandez admitted he saw Officer Beyea chase Steele. The superior court concluded that, at that time, Hernandez and Steele "were still in the commission of the burglary while they were trying to get to safety." Hernandez does not contest the superior court's factual finding he knew the victim was a peace officer engaged in the performance of his duties, nor does he argue the court used an incorrect standard of proof. (See *Rodriguez, supra,* 58 Cal.App.5th at p. 244.) Instead, he argues the superior court erred because he did not have that knowledge until after the burglary was complete. The court correctly determined Hernandez had the requisite knowledge

under section 189, subdivision (f), and therefore could be convicted of murder under sections 188 and 189 as amended.

###### 1.    *Applicable Law*

In *People v. Wilkins* (2013) 56 Cal.4th 333 (*Wilkins*) the Supreme Court addressed "whether 'a *killer* [is] liable for first degree murder if the homicide is committed in the perpetration of a . . . burglary.'" (*Id.* at p. 342.)  The Supreme Court in *Wilkins* acknowledged that *People v. Cavitt* (2004) 33 Cal.4th 187 (*Cavitt*) addressed "'a *nonkiller's* liability for the felony murder committed by another.'" (*Wilkins*, at p. 342, quoting *Cavitt*, at p. 196.) Under *Cavitt* a nonkiller like Hernandez is liable for felony murder "'if the killing and the felony "are parts of one continuous transaction."'" (*Cavitt*, at p. 207; see *id.* at p. 208 ["[t]he continuous-transaction doctrine . . . defines the duration of felony-murder liability, which may extend beyond the termination of the felony itself, provided that the felony and the act resulting in death constitute one continuous transaction" (italics omitted)].)

A related but distinct doctrine called the "'escape rule' defines the duration of the underlying felony . . . by deeming the felony to continue until the felon has reached a place of temporary safety." (*Cavitt*, *supra*, 33 Cal.4th at p. 208; see *Wilkins*, *supra*, 56 Cal.4th at p. 341.)  When a killing occurs while a perpetrator attempts to flee, "the escape rule establishes the 'outer limits of the "continuous-transaction" theory.'" (*Wilkins*, at p. 345.)  Thus, "'[u]nder the felony-murder rule, a strict causal or temporal relationship between the felony and the murder is not required; what is required is proof beyond a reasonable doubt that the felony and murder were part of one continuous transaction.  [Citation.]  This transaction may include a defendant's flight after the felony to a place of temporary safety.'"

(*Id.* at p. 340.)  The question "whether the defendant has reached a place of temporary safety is an objective one to be determined by the trier of fact."  (*People v. Russell* (2010) 187 Cal.App.4th 981, 991; see *People v. Johnson* (1992) 5 Cal.App.4th 552, 559.)  We apply "a deferential standard of review in determining whether the evidence supports . . . the superior court's factual findings."  (*Rodriguez*, *supra*, 58 Cal.App.5th at p. 238; see *People v. Lopez*, *supra*, 56 Cal.App.5th at p. 953 [substantial evidence standard of review applies to findings of fact in postjudgment orders, including those under section 1170.95].)

> 2.    *Hernandez Was Still in Flight When He Knew or Reasonably Should Have Known the Victim Was a Peace Officer Acting in the Course of His Duties*

Hernandez argues that the burglary ended when he left the electronics store and that he had to have had the requisite knowledge under section 189, subdivision (f), before that time.  Hernandez cites *People v. Montoya* (1994) 7 Cal.4th 1027, where the Supreme Court held that, for the purpose of aider and abettor liability, a burglary ends when the defendant leaves the structure.  (*Id.* at p. 1047.)  The Supreme Court in *Montoya*, however, stated that this definition of the duration of a burglary "need not and should not be identical to the definition pertinent to felony-murder liability," and the Supreme Court cited cases holding that a burglar's liability for felony murder "continues through escape until [the] perpetrator reaches [a] place of temporary safety."  (*Id.* at p. 1045, fn. 9.)  The Supreme Court subsequently held in *Cavitt* that the continuous transaction doctrine obviates the need to inquire whether the underlying felony was completed or abandoned before the homicide occurred.  (*Cavitt*, *supra*, 33 Cal.4th at p. 207; see *Wilkins*, *supra*,

24

56 Cal.4th at p. 346 [felony murder liability extends "beyond the technical completion" of the underlying felony].)

For purposes of liability for felony murder, the burglary of the electronics store and the killing of Officer Beyea were parts of one continuous transaction because Hernandez had not yet reached a place of temporary safety. Hernandez and Steele fled the store with stolen merchandise when they heard helicopters. After they jumped a fence and hid under an apartment building, a resident called the police to report prowlers. Hernandez and Steele then climbed over a wall and, once on the other side, Hernandez saw Officer Beyea chase Steele. Hernandez took refuge in nearby bushes, but soon heard multiple gunshots and saw Steele run past him. Police officers apprehended Hernandez less than 30 minutes later, about an hour after Officer Beyea first responded to the scene. This evidence amply supported the superior court's finding Hernandez knew the victim was a peace officer engaged in the course of his duties as a peace officer before Hernandez reached a place of temporary safety. (See *People v. Russell, supra,* 187 Cal.App.4th at p. 992 [defendant had not reached a place of temporary safety where his flight from police by car at over 100 miles per hour evidenced his "fear of apprehension"]; *People v. Young* (1992) 11 Cal.App.4th 1299, 1306 [defendant had not reached a place of temporary safety where a witness, having spotted the defendant within four blocks of a robbery, called the 911 emergency operator and two minutes later the defendant fled at high speed]; *People v. Johnson, supra,* 5 Cal.App.4th at p. 561 [defendant had not reached a place of temporary safety where he was "in constant flight" from police].)[8]

---

[8]     Hernandez argued at the evidentiary hearing in the superior court that he did not know, and could not reasonably

## DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

---

have known, "the victim" was a peace officer within the meaning of section 189, subdivision (f), because he was not present when Steele shot Officer Beyea. Hernandez does not make this argument on appeal.